The first case, excuse me, on our call of the docket for March 2011, we actually begin with Agenda Number 2. Agenda Number 1, People v. Pate, was removed from the call by order of Governor Quinn's March 9, 2011 commutation order, so we're going to start with Agenda Number 2, Council. This is Case Number 1-9-616, People v. Pierre White. Good morning, Your Honors. Mr. Chief Justice, I am Cook County Assistant State's Attorney Kathryn Schor, on behalf of the people of the State of Illinois. May it please the Court. The following principles provide a framework for this case. There is no question that murder is a single offense in Illinois. Therefore, the firearm sentencing enhancements are not elements and do not create a distinct murder offense. Nor is there any dispute that the people have the executive power to plea bargain for lesser-included offenses by making sentencing concessions, as this Court recognizes in its own Rule 604D. In this Court's case law also recognizes the people's authority to choose what offense to prosecute through to conviction. That being said, what is actually in dispute here is the intent of the parties and whether they bargained for a negotiated plea to unenhanced murder. The entire record in this case demonstrates that the parties entered into a negotiated plea to unenhanced murder and defendant's sentence is legal. The question of what the parties bargained for and what defendant actually pled guilty to must be answered first before we presuppose the applicability of ARNA's voidness rules. This is where defendant errs. The record in this case demonstrates that defendant's plea was to unenhanced murder, not enhanced murder. That's why the trial court did not abuse its discretion in denying both of defendant's motions to withdraw its plea. Is the unenhanced charge in the indictment? Sorry, Your Honor? Is the unenhanced charge in the indictment? Yes, it's all charges that are lesser than the original greater enhanced murder charge contained in the indictment, as any other lesser included offense would be by analogy. And so, therefore, it's included by implication in the indictment. Included by implication? Sorry? You said it's included by implication. Yes, it's included in the indictment. All of the elements of murder are in there, including the sentencing enhancement factor. And when the parties agreed to enter into a negotiated plea to unenhanced murder, meaning murder within the unenhanced sentencing range, then the firearm language became surplusage. And was the trial court advised at the plea hearing that it was a plea to unenhanced murder? Through the record and the seven-month negotiation plea process, defense counsel periodically updated the trial court. The defense counsel, in describing these plea negotiations, admitted to the trial court that, quote, they were trying to get something, they reached out to the state in an attempt to get something on a lesser degree. The trial court, which they obtained in getting when the defendant accepted the people's 28-year offer, the trial court was aware that the people made two offers to the defendant within the unenhanced sentencing range. The first offer was a 30-year unenhanced sentencing range, which the defendant rejected. A few months later, the people reduced that offer to a 28-year sentencing range, which was also a term only within the unenhanced murder range, and the defendant accepted that. The trial court was a participant during these seven-month long negotiation plea process, and was well aware that the party's intent was to bargain for something lesser than the enhanced murder charge, and that they achieved that negotiated plea for 28 years, and it accepted that offer. So, yes, it was aware. Does the record reflect that? In other words, when we look at the record and read the record, will that be apparent? Absolutely, Your Honor. There's many other, in addition to that record evidence that I just mentioned, specifically the defense counsel telling the trial court that they were trying to get something on a lesser degree. The minimus also reflects that, and it's further support for the conclusion that the plea was to unenhanced murder. May I clear up something? You indicated just now that the court participated in the plea negotiations. Were these what we call 402 conferences? No. In that, the court was kept abreast of what the parties were doing. Status takes were asked for by defense counsel several times. The trial court granted continuances as defense counsel requested, knowing through defense counsel that they were negotiating for, you know, something on a lesser degree. So the trial court, in that sense, was a participant because it was kept aware of what the parties were doing. Ms. Sherrill, I want to go back a little bit. Can there ever be an unenhanced murder when a firearm is involved? Absolutely. There is no conflict between the legislative function and the executive function here. But didn't the legislature specifically mandate that if a firearm is involved, a sentence must be added? That is, if the firearm is an operative fact upon conviction and within the crime of conviction, the legislative mandate only takes place with respect to the actual crime of conviction. Prior to that, pre-conviction, the people have the power to negotiate for reduced offers and pleas to lesser included offenses, as this court's own rules recognize, Rule 402 and 604D. So when the people exercise their power to plea bargain a universal good accepted throughout our system, it doesn't conflict with the legislative power to mandate a sentence that corresponds to the crime of conviction. However, if we find that there is an unenhanced murder when a firearm is involved, wouldn't we be ignoring, I mean, the court be ignoring this requirement? Absolutely not. Under ARNA, the mandated sentence is only triggered upon the crime, by the actual crime of conviction. Here, the crime of conviction and the judgment that was entered was an unenhanced murder. For unenhanced murder, the legislature has mandated a range of 20 to 60 years. This sentence is 28 years, and it fully comports with the legislative mandate for a crime of unenhanced murder. But if the evidence is presented that a victim was shot or that the gun was involved, wouldn't that sentence enhancement automatically apply? No. The people, again, in the plea context have the ability to negotiate out otherwise operative facts and to make sentencing concessions and to make certain facts, for example, the firearm sentencing enhancement, inoperative via the negotiated offer that they've made with a defendant. Now, the mere fact that the firearm language is also in the factual basis does not alter or change a party's intent in the meeting of the minds of what negotiated plea they entered into and what the trial court accepted and entered judgment on. But if the statute is mandatory, the trial court has no discretion on imposing it. The statute only becomes mandatory once the crime of conviction is for enhanced murder, murder with a firearm. The record here indicates very clearly that the parties agreed to enter a plea on unenhanced murder. You know, but can the parties bargain away a statutory requirement? Yes, they can. If we charge a defendant with armed robbery and we enter into a plea with a defendant for robbery, no one would suggest that a sentence corresponding with robbery was illegal or void under ARNAS simply because the original charge was for armed robbery. The people have the power pre-conviction to make those sentencing concessions, to make reduced offers, and to enter into those types of negotiated plea agreements. Counsel, I understand your contract argument with respect to there was a meeting of the minds on unenhanced murder with a 20 to 60 range. The defendant's position, however, is that judgment was entered on unamended count one, right, which did include the firearm enhancement language. Is that right? That appears to be the defendant's position. And getting back to Justice Garmon, you're saying that that is completely contradicted by the record? Yes. And the discussions? Yes. You would agree it would be a different case if indeed, especially when we're talking about intent, if they were correct on that, right? Yes. All right. Okay. If the record, yes. Okay. Yes. There's further support, record support, in this case that defendant agreed to enter into with the state on a negotiated plea for unenhanced murder. The defendant suggests that the way to avoid this problem is for the state to file an amended charge. Now, you used an example of robbery, an armed robbery. Is it customary for the state to actually amend the charge if the plea is to a lesser included offense of the charged offense? I don't know if it's customary or not, Your Honor, but I do know that it is not legally required to strike any type of surplusage from an indictment once there is either a negotiated plea to a reduced charge, reduced offense, or if a jury enters a verdict on a lesser included offense, or a trial court in a bench trial enters a verdict on a lesser included offense. In no area of law that I can find is there any legal mandate that the people must strike language that becomes inoperative by virtue of either a verdict or a negotiated plea agreement and is in effect surplusage. So what defendant suggests is that the people somehow in the plea context would have to make an unnecessary formal amendment of surplusage in order to preserve a valid voluntary guilty plea, and he can point to no legal basis for his claim. So, no, it's not necessary in any other context. It's never been necessary here. And if it's made necessary here, it conflicts with other areas of law. Ms. Sherrill, you also explained to me, you said the firearm element is not an element of the offense, and it is a sentencing enhancement factor. But then later you argued that the defendant pled guilty to a lesser included offense, so murder with a sentencing range of 20 to 60 years. Is that right? Which is it? I simply use the language lesser included offense and unenhanced murder to describe the situation with respect to the murder charge and the murder offense in Illinois. It's analogous and operates in an analogous fashion as lesser included, greater included offenses. It is a sentencing enhancement factor that changes the range of the sentence, but not the elements of murder, but for lack of any other terminology. By analogy, I refer to those principles by analogy. But if it's not an element, then murder with a sentencing range of 20 to 60 years cannot be a lesser included offense. Right. It's simply analogous. It stands in relation to enhanced murder as robbery stands in relation to armed robbery. And I could find no other way to refer to it because it's sui generis. So I use those terms by analogy. Defendant's first motion supports the conclusion that he entered into the negotiation for unenhanced murder. He never made any type of irony claim. He simply claimed that he didn't have enough time to think about it and he might have won at trial, essentially that he had buyer's remorse. It wasn't until his second motion that he made this belated irony claim that he pled guilty to enhanced murder and that his sentence was illegal. The trial court denied both of these motions precisely because it was a participant below. It was aware and kept abreast of the party's intent and it knew full well that defendant didn't have any viable irony claim because he entered into a plea for unenhanced murder. Just one last time. Tell me how the court knew that. Clearly never did the State say, Your Honor, we are proceeding here on the reduced charge. Right. For example, your example of armed robbery to robbery. You know, Judge, this is an armed robbery case and we're recommending the sentence of three years, for example. Kind of hanging out there. What record evidence do you have here that the trial judge was aware, as you say, participated in the reduction of this charge? All of the record evidence that I've pointed to, the reduced plea offers, two of them, the trial court knowing what was going on, the seven-month negotiation process, defense counsel telling the trial court that it was trying to get something on a lesser degree. The offer when it was made. And the arguments in the motion to withdraw as well. The trial court, the people indicated that they never sought the enhanced murder firearm factor because defendant didn't have the firearm. The factual basis didn't put the firearm in defendant's hand. The people didn't seek it and they also argued to the trial court that they never, because they weren't seeking it, they never tried to get a specific finding from the court on the firearm factor. So the trial court knew, as well as all the other parties, as well as the record reveals on review, that the intent was to enter into the case. And that's the reason why also the trial court rejected the applicability of people V-sharp to this case, because it didn't, defendant's plea didn't involve the firearm factors. Also, it seems kind of odd that the state would be arguing for voidness since the defendant would receive a higher sentence. It's odd that we're arguing to It's usually the opposite. Because the state should be arguing that it's void because the defendant would be receiving a higher sentence. It's the people's power to enter into a reduced negotiated plea. That's been affected by the appellate court's holding here. And the people, there's nothing void about this particular plea and sentence that the parties entered into. And simply because sometimes we'd want a higher sentence. In this particular case we didn't. We made two offers on a reduced sentence to this defendant. So the people's power to do that is what the appellate court has affected in this particular case. By ignoring the record evidence and focusing only on the language in the original indictment and the factual basis. And as I said, the inquiry is fact intensive and it's into the party's intent and the meaning of the minds. The factual basis and the extraneous facts can't alter that. They simply provide the trial court with a full picture of what the defendant has done here. So it can properly accept or reject the plea. We do not and never have denied that ARNA principles do impact some plea proceedings. And we don't claim that they only benefit the state as defendants suggest. We simply take issue with the fact that ARNA was never activated in this case. Defendant's argument presupposes that his plea was for enhanced murder, but the record belies this claim. The intent of the parties was that it was for unenhanced murder. It's demonstrated by the record and his sentence is not illegal. For these reasons and those stated in our briefs, this court should reverse the appellate court and affirm the trial court's denial of defendant's motions to withdraw his plea. Thank you. Counsel for Appellee. Good morning, Your Honors. Mr. Chief Justice, and may it please the court, I'd like to make one thing perfectly clear at the outset. Could you state your name for the record, please? Yes, Your Honor. Darrell Oman for the defendant appellate, Pierre White. Thank you. I'd like to make one thing perfectly clear at the outset of this case. The appellee in this case is asking this court to apply its 24 years of precedent as the appellate court did below. We're simply asking this court to affirm on that basis. The state has not made any argument that precedent is wrongly decided or that it should be overturned. On the contrary, it seems all of its arguments pertain to the facts of the case. And therefore, I'll go directly to that point. Excuse me. The state also argued that ARNA was not triggered. Yes, Your Honor. The state has argued that ARNA is not triggered under the specific facts of this case. So I'll proceed to discuss those facts. The state's argument concerning the plea negotiation hearings are based on stray comments at status hearings, including comments that were made several months before the actual guilty plea was entered in this case. But if you look at the hard facts in the record, all of them indicate that he was charged and convicted of enhanced murder. First, if you look at the indictment itself, he's charged under Count 1 with first-degree murder, while armed with a firearm, which is mandatory, which triggers the 15-year enhancement, as Justice Burke pointed out, under this Court's fairly recent decision in People v. Rodriguez. Second, if you look at the factual basis of the plea, there's much discussion in there about how a firearm was used in the offense and even what happened with the firearm after the offense occurred up until Mr. White was arrested with the firearm, which is completely gratuitous because the elements of first-degree murder, had they been entering a plea to simple, unenhanced first-degree murder, would not include any of these facts. And third, with respect to the commitment order itself, it indicates that the plea was entered on Count 1. And again, Count 1 of the indictment was never amended in this case. Now, the defendant filed a motion to withdraw in this case, and there's a record with that. So if Your Honors look at that transcript, the State did not make the argument at that hearing as it makes today. It didn't argue that, no, we reduced the charge, we plead to a lesser offense. It argued that Sharp did not apply, that he wasn't the shooter, that he pled under a theory of accountability. But again, as this Court made clear in Rodriguez, that doesn't mean that the add-on doesn't apply. In fact, the add-on, the 15-year add-on applicable in this case, fully applies under a theory of accountability where somebody else is the shooter, and a defendant like Mr. White is accountable for that defendant's conduct. The State's basic response outside of the facts and the law is a parade of horribles, which doesn't really reasonably follow from their premises. Their main argument is that it somehow restricts prosecutorial discretion. But we can see that the prosecutor was in a position to reduce the charges in this case, but they did not actually do so. It requires an affirmative step, something on the record, certainly more than straight comments at status hearings, to avoid an honor problem. In most cases, this isn't an issue, including the example of armed robbery and regular robbery. And we can see that it's not necessary to amend the indictment in that case. And the reason for that is because in a case of armed robbery, simple robbery, aggravated battery, simple battery, it would be plain on the record that he was convicted of the lesser included offense. I mean, the commitment order itself would indicate simple robbery, it would indicate simple battery. While the indictment would indicate the enhanced offense, it would be clear from the record that there's not an honor problem. The difference, as the State discussed, is that first degree murder is at least somewhat different than the typical greater offense, lesser offense scenario. Whatever it is, it's called first degree murder, enhanced in various ways until recently capital murder. It was still charged as first degree murder. The commitment order would still say first degree murder. Well, what's wrong with the State's argument that this is just a voluntary agreement based solely on the language and the original charge and the factual basis? Well, the initial problem with that, first of all, is that it's simply wrong. There's no evidence in the record that the charges were actually reduced. The main fact that the State relies on is a comment of the status of several months before the actual plea was entered that the defense counsel was looking for something of a lesser degree. And again, this was at the outset of plea negotiations in this case, and that's a great starting point for negotiations. Anyone charged with first degree murder is looking for something of a lesser degree. But as a matter of fact, that's not what actually happened. He didn't receive anything of a lesser degree. He was charged with first degree murder. He was convicted of first degree murder. It wasn't reduced to second degree murder or anything less than that. Is it your position, counsel, that there is no such offense as an unenhanced murder, first degree murder? It's unclear whether they're separate offenses. There is a strong indication that first degree murder is a single offense, but there are different enhancing factors. Could the State have struck the enhancement here, just struck the use of a pen? Yes, and it has done so. And then would the plea stand? Yes, absolutely, because it has done so in other cases. Other prosecutors recognizing that there is an art of problem if you allow the original indictment language to stand, particularly in this Court's decisions in Rodriguez and Hauschild, has, on the record, struck that language from the indictment. They've also modified the factual basis to limit it to the elements of first degree murder, which doesn't require any discussion of the means of death. So it's your position that they always must take some affirmative action, whether it's striking language in the indictment or filing an amendment or different offense? Yes, at the very least, there has to be some clear indication on the record, which we don't have here. And it's a very real risk. In this Court's case of People v. Jackson, there was a much better record than there is in this case. In Jackson, the prosecutor said, clearly on the record, we're not going to pursue the enhancement. We plea that away. The defendant entered a guilty plea based on that agreement that they would not pursue the enhancement. However, the indictment alleged brutal and heinous. The factual basis made it very clear that the offense was brutal and heinous, and the trial judge went ahead and entered an enhanced sentence in that case. And it came all the way up to this Court, and this Court affirmed the enhanced sentence, notwithstanding the fact that the record was very clear that the state had plea bargained that away. We have even less of a record in this case because no such statement was on the record. In Jackson, we agree that it would have been possible for the state to negotiate that away, but it's clear that what they did in that case was not enough. And therefore, what they did in this case, which is much less, clearly cannot be enough. There must be some additional affirmative step, such as we've seen in other cases. The recent case before this Court of People v. King, the charges were reduced in that case from, I believe, first-degree murder to secondary murder, some lesser offense than what the charged offense was. And numerous other cases cited in our brief where the charges were reduced literally to a lesser offense. So an affirmative step is necessary. The enhancement doesn't even have to be alleged in the indictment, right? That's correct. So you're saying even without an enhancement in the indictment, there has to be some affirmative step taken saying that these enhancements are going to be ignored for purposes of the plea? Yes. The parties below have to make a very clear record so it's known that there's not an honor problem, that Mr. White or another defendant in his position is not going to have the rug pulled out from under him at a later date, potentially having 15 years added to his sentence, or maybe have to take a case to trial years down the line when all of his witnesses have evaporated and be in no position to defend himself. The plea was, what, for 28 years? Yes. Within the 20 to 60 range. Any import to that? No, because the minimum, if a firearm is included in the offense, as stated by the Illinois legislature, is 35 years. And this Court held in Rodriguez that that's a legitimate means for the legislature to deter gun crimes. The state at one point made a separation of powers argument, but in reality its argument doesn't give due deference to the Illinois legislature's decision that the minimum should be 35 years, and this Court's decision in Rodriguez that it's mandatory. But I'm asking the question for a slightly different reason. The fact that it is within the range of 20 to 60, with a trial court assuming to know the law, does that give any credence to their position that the intent from the very beginning was not to include the enhancement? No, because we can't assume that the trial court in this case knew the law. The record indicates that it did not, even though the decision in this case was two years after this Court's decision in Sharp revived the add-ons, several days after the House trial decision applied this exact add-on in the ARNA context. The Court said at the motion to withdraw hearing, pursuant to the state's argument, that Sharp does not apply. But it's abundantly clear, and the state does not argue today, that Sharp does apply. Rodriguez, House, Child, make it very clear that the 15-year add-on is mandatory under these circumstances. Are you suggesting, or was it your indication a few moments ago in the comment you made, that if the state wished to, in this case, challenge the sentence as void, it could do so under the facts of this case? Yes, absolutely. You said it could pull the rug from out. At any time. Look, this Court's 24 years of precedent on this issue, dating back to People v. Wade, People v. ARNA, all the cases applying that make it very clear that this issue could be raised at any time, in any court, that it's not subject to waiver. It could be raised sua sponte by a court itself, even when the state doesn't raise it. When the state, as they argue here, didn't want the extra years, the court could add them by itself, any court. In previous cases, this Court has applied it where the argument was raised three years after conviction, based on a mandamus petition filed originally in this Court. This Court has allowed the state to file direct appeals of criminal decisions, where there's no authority to do that, of course, under these Court's rules. But because it's void, because it's a jurisdictional issue, this is consistent through 24 years of case law. If it's unauthorized, as it is here, it's a jurisdictional problem. It's void. It could go away at any time. And then, of course, as Justice Burke suggested earlier, you would be arguing what the state is arguing now. That's correct. In fact, we have argued it before, and we lost. Numerous times the defense has raised similar arguments to what the state is raising now, and this Court has ruled against the defense. So it would be fundamentally unfair to rule the opposite way now, just because the state's the one now propounding the arguments, of course. And another example of the state expressly reducing the charges, the Morrissey case cited in the state's reply brief. The prosecutor in that case expressly on the record said, we're reducing the charges. Quote, we would elect to treat it as a misdemeanor. In that case, it was a felony versus a misdemeanor. We would elect to treat it as a misdemeanor and eliminate the penitentiary aspect of it. And this is a case cited by the state, and there's numerous additional cases cited in our brief indicating the same thing. The state can and has the power to expressly reduce the charges to avoid the ARNA problem in this case. And if it would simply pay due deference, the 24 years of precedent of this Court, ARNA problems like the one at issue in this case would not appear. For all these reasons, this Court should affirm the decision of the appellate court. Thank you, Your Honors. Thank you, Counsel. Defendants first claim that there's 24 years of ARNA precedent. It doesn't apply here to this case. The plea was to unenhanced murder, and the 28-year sentence is legal. So ARNA precedent doesn't apply. However, defendant has the burden to establish that his plea was infirm. The plea at this point is presumptively valid. The record bears out the validity of the plea here. The plea bargaining process is based on the intent of the parties in a meeting of the minds. It is not based on an original charge in an indictment, and it certainly is not based on the factual basis. And the people have an obligation in the factual basis to provide the trial court with a clear picture of defendant's criminal conduct, as they did in the Jackson case, exactly pointing to the purpose of the factual basis itself. In Jackson, although the people made a reduced plea offer, they provided the court with a clear picture of the defendant's criminal conduct, and the trial court exercised its discretion and rejected the negotiated plea. On the intent issue, are you relying solely on these statements that were made at status conferences? We're relying on not solely the statements that the defense counsel made to the trial court in asking for continuances, also the two offers made by the people in response to defense counsel's request for something on a lesser degree, as well as the mitimus itself refers only to murder and its citation. It makes no mention of the sentencing enhancement provision by language or by citation. It further supports the meeting of the minds here and what everyone below understood it to be, that it was a negotiated plea to unenhanced murder. Defendant has the burden to marshal evidence here to overcome the presumptive validity of his plea and the trial court's denial of his two motions. The trial court heard the argument, this exact argument that defendant is making today, and the trial court was in the position with firsthand knowledge of what the parties agreed to and rejected. The fact that Rodriguez came out well after this plea was taken, further supports the fact that it was an unenhanced murder plea. The people at that time did not know, and in fact no one knew, not even the appellate court knew, whether or not these firearm enhancement provisions applied in accountability cases. The people took that firearm enhancement off the table for whatever reason, but it was uncertain whether it would apply to accountability. This defendant did not have the gun in his hand. The people made an offer on a reduced sentence of the unenhanced range and the defendant accepted it. This defendant suggests have to sanitize the factual basis. The trial court in Jackson wouldn't have the benefit of knowing what the defendant actually did there so that it could reject that sentence, and the trial court in every other situation wouldn't be fully informed to properly exercise its discretion. There is no legal rule of law that the people should sanitize a factual basis and mislead the trial court in exercising its discretion. Why shouldn't the state clearly state its intention to reduce the charge? The state, it may be easier, it may be clearer, but there's no legal requirement anywhere that the state should clearly state that it has an intention to reduce the charge. In fact, the state's actions here clearly indicate that it reduced the charge, not only that it intended to, but that it actually did. And that defendant accepted the reduced offer. That is exactly why the principles for motions to withdraw vest the discretion in the trial court who has firsthand knowledge of what the parties are doing, what the negotiation process is involving, what's occurring below, and the exercise of its discretion is entirely up to the parties. It's entitled to the deference that's always been given. And here, this trial court certainly did not abuse its discretion, and the defendant certainly did not need his burden to establish that his plea was infirm. Counsel, let me ask you this question from a different take in terms of Justice Tice's question about whether or not the state should clearly state their intentions to reduce the charge. Our opinions in cases involving MSR, and I know it's not the same, but you have people pleading a defendant, pleading to a sentencing range, and the defendant later comes back and says, well, nobody told me about MSR. It's not an enhancement in terms of time in the sentence, but it's additional time on top of the sentence where they're obligated to do MSR conditions. How does that rationale, that kind of thought process, and that plea scenario compare to the MSR? In the MSR, the party's intent is not taking into account that additional time period that the defendant would be subject to. So the defendant, the parties in the trial court are overlooking that period of time, so it affects what the bargain, what bargain was struck and what the intent was. It changes the bargain that they struck. Here, nothing changes the bargain that the parties struck here. It was for unenhanced murder. The sentence was within the sentencing range. There's absolutely no defect, no infirmity to this negotiated plea agreement. So off the top of my head, that's one difference. The other difference that I can see that it's not the bargain that the defendant bargained for in the MSR situation, what he expected to receive. In this case, by contrast, the defendant received exactly what he asked for and expected to receive. So they're inapposite to each other. Defendants indicated that they believed that the State could take the office attack and at any time try to pull the rug out from under the defendant based upon 24 years of following ARNA. My recollection of the cases following ARNA had to do with void sentencing so far as probation granted where it was unavailable or consecutive sentence being required where concurrent were entered. Are there any situations where this type of situation evolved and resulted in the State seeking to enhance the sentence? The State, first of all, its ability to appeal is extremely limited by this Court's rules. If the sentence does, in fact, violate the legislative mandate, based on the fact that the State is seeking to enhance the sentence, then the State has a right to appeal. If the sentence is violated based on the actual crime of conviction or other conditions that the legislature has mandated, like criminal history, for example, then it is illegal. In this particular case, it's not illegal. In many cases, many, many cases where the State has made reduced plea offers and the defendants accepted them, it's within the range prescribed by the legislature for the act. So ARNA is a neutral rule of law that applies when a sentence is illegal. The notion that the State would try to overturn pleas that it offered and it sought to end the prosecution on the basis of the fact that the State is seeking to enhance the sentence is not illegal. And as I said, the State is very limited in what it can appeal and what it can challenge. So I don't see... Since ARNA was decided, there have been obviously many, many cases in which these issues have been raised. Are you aware of any of those cases, were they in a plea setting or was it sentencing after trial? Were any of the cases in which these issues have been raised? Yes. Yes, there's some where pleas were entered into, it's negotiated sentences, but because of the defendant's criminal history, he wasn't eligible for this negotiated sentence. There's some cases that I know specifically, although I don't know their names off the top of my head, that that has happened. That is why the people say we do not deny that ARNA may impact some plea proceedings. But here, it doesn't, it's not activated and it doesn't affect any plea proceedings. It doesn't affect the plea negotiation that was entered into in this case. Counselor, your time has expired. For these reasons and those stated in our briefs, the people ask this court to reverse the appellate court and affirm the trial court's denial of defendant's motions to withdraw his guilty plea. Thank you. Thank you. Case number 109-616, People v. Pierre White, is taken under advisory.